**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| CAUSEMEDIC, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | No. _____ |
| | ) | |
| HEAVENLYRX, LTD. | ) | |
| (a/k/a HEAVENLY RX, LTD.), | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

Comes the Plaintiff, Causemedic, LLC, a Colorado limited liability company ("**Causemedic**"), by and through counsel, and brings this action against the Defendant, HeavenlyRx, Ltd. (a/k/a Heavenly Rx, Ltd.), a Canadian corporation ("**Heavenly Rx**").

## PARTIES, JURISDICTION & VENUE

1.      Causemedic is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business located at 3500 Rockmont Dr. Suite 2201, Denver CO 80202.  Causemedic also operates an office located at 428 E. Scott Avenue #B6 Knoxville, TN 37917.

2.      Heavenly Rx is a corporation organized and existing under the laws of British Columbia, Canada, with its principal place of business located at 100 King Street West Suite 5600 Toronto, Ontario Canada M5X1CR.  Heavenly Rx may be served with process through its registered agent, Alicia McMurray, at 105 Legacy View Way, Knoxville, TN 37918-8230.

3.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

4.     Venue is proper in this Court and judicial district pursuant to 28 U.S.C. § 1391.

5.     An actual and justiciable controversy exists between Causemedic and Heavenly Rx, and Causemedic is entitled to declaratory relief pursuant to 28 U.S.C. § 2201 and/or Fed. R. Civ. P. 57.

## FACTUAL ALLEGATIONS

6.     Causemedic is a manufacturer and seller of premium hemp and CBD-infused cosmetics and spa products.

7.     In April of 2019, Causemedic was introduced to Heavenly Rx by Joe Fox, a Knoxville-based entrepreneur who is engaged in one or more other hemp and CBD related ventures.

8.     Following the introduction made by Joe Fox, the parties entered into preliminary negotiations about a potential business transaction, which would generally consist of Heavenly Rx acquiring a majority ownership interest in Causemedic.

9.     In furtherance of the parties' negotiations, a first draft of a document captioned "*Confidential Term Sheet – Proposed Minority Acquisition & Financing of Causemedic, LLC*" (the "**Term Sheet**") was prepared and forwarded to Causemedic in late April 2019.

10.     The first draft of the Term Sheet had little value to Causemedic because it contained a number of provisions that bore no relation to the terms that had been discussed between Heavenly Rx and Causemedic.  In fact, the first draft of the Term Sheet appeared to relate to another transaction between Heavenly Rx and another unknown party.

11.     In good faith and at its own expense, Causemedic had its legal counsel work on the Term Sheet in an effort to conform it to the parties' discussions about a potential transaction.

12.     Over several weeks, the Term Sheet went through a series of revisions by the parties and their respective attorneys.

13.     On or about May 16 or May 17, 2019, the parties finally executed a one-page cover letter (which on its face is dated May 13, 2019) to signify their preliminary, mutual understanding and acceptance of the final draft of the Term Sheet, which was attached to the cover letter and incorporated by reference.

14.     Copies of the executed cover letter and the final draft of the Term Sheet are attached to this Complaint and marked as **<u>Exhibit 1</u>**.  The executed cover letter and Term Sheet are hereinafter referred to collectively as the "**LOI**."

15.     Among other things, the LOI stated that:

(a)     "… the attached Term Sheet sets forth the basic terms and conditions of the proposed majority equity acquisition and financing of Causemedic (the "Transaction")."

(b)     "This LOI and the terms contained herein are meant to be binding upon the Purchaser and Company.  However, the Transaction contemplated in this LOI is subject to Purchaser's legal, financial, business and tax due diligence ***and to the negotiation, preparation, execution, and delivery of Definitive Agreements (as defined below) acceptable to the Parties in their sole discretion***."  (emphasis added)

(c)     "This LOI, and the terms negotiated within, are intended to be binding upon Company."

(d)     "Please sign in the space below to acknowledge your agreement to the terms set forth in the Term Sheet ***as the basis on which we will prepare definitive agreements***

and your agreement to be bound by the provisions contained in the Term Sheet." (emphasis added)

16.     The Term Sheet contained various business terms that were negotiated by the parties during the negotiation and preparation of the LOI, including (but not limited to) the purchase price that would be paid by Heavenly Rx ($1,625,000) as well as the proposed payment terms and the use of the proceeds.

17.     The Term Sheet also included several provisions that contemplated further negotiations between the parties concerning essential terms that might be included in a "Definitive Agreement."

18.     When Causemedic received Heavenly Rx's first draft of the proposed "Definitive Agreement," the agreement was captioned "Preferred Unit Purchase Agreement." It contained several provisions that were directly contradictory to or otherwise inconsistent with the LOI.

19.     Without limiting the generality of the foregoing, the following provisions in the proposed Purchase Agreement were inconsistent with the terms of the LOI:

        (a)     The draft Purchase Agreement contemplated the issuance of "preferred units," which was never contemplated in the LOI, whereas the LOI contemplated the purchase and sale of "common" membership interests of a single class. The creation or issuance of "preferred units" was never deemed acceptable to Causemedic.

        (b)     The draft Purchase Agreement contemplated that $825,000 of the purchase price would be paid to Causemedic and then distributed to the Members on a pro rata basis, whereas the LOI contemplated that the same $825,000 would be paid directly to one of the founding Members of the Company. The payment structure that was agreed upon in the LOI

was drastically different than the payment structure proposed by Heavenly Rx in its draft of the Purchase Agreement.

(c)     The draft Purchase Agreement contemplated a purchase price adjustment based on a "Net Working Capital" calculation.   No such adjustment was ever agreed to by Causemedic, nor was it ever mentioned in the LOI.

(d)     The draft Purchase Agreement contemplated the parties entering into an amended and restated operating agreement.   That fact, by itself, was not a surprise to Causemedic.   However, the draft operating agreement from Heavenly Rx contained a number of provisions that were wholly unacceptable to Causemedic because they would have granted Heavenly Rx preferential rights that were never discussed between the parties and they were not included in the LOI.

20.     In addition to the substantial differences between the LOI and the drafts that were proposed by Heavenly RX, there was one additional term that was specifically negotiated by Causemedic and was a material inducement for Causemedic entering into the LOI.   Specifically, at Causemedic's insistence, the LOI provided that Joe Fox – a trusted industry participant who introduced Causemedic and Heavenly Rx, and someone with whom Causemedic has enjoyed a good business relationship – would be a member of Causemedic's Board of Managers.   The early drafts of the Purchase Agreement did include language to the effect that Joe Fox would be a member of the Board of Managers; however, Causemedic subsequently learned that Heavenly Rx was no longer willing to appoint Joe Fox to Causemedic's Board of Managers.

21.     Moreover, when it executed the LOI, Causemedic was informed by Heavenly Rx that Joe Fox was also a member of the Board of Directors of Heavenly Rx, or that he would soon be a member of the Board of Directors of Heavenly Rx.   Together with the appointment of Joe

Fox to Causemedic's Board of Managers, this fact was a material inducement for Causemedic to enter into the LOI. However, Causemedic subsequently learned that Joe Fox was <u>not</u> appointed to the Board of Directors of Heavenly Rx, and that Heavenly Rx had declared that Joe Fox would never be appointed to its Board of Directors.

22.     These changes regarding Joe Fox's involvement (or lack thereof) marked an alarming departure from the status quo that existed between Heavenly Rx and Joe Fox at the time when Causemedic entered into the LOI.

23.     Without verbal and written assurances from Heavenly Rx concerning Joe Fox's involvement on Causemedic's Board of Managers and Heavenly Rx's Board of Directors, Causemedic would not have entered into the LOI and this fact was made known to Heavenly Rx on multiple occasions.

24.     As set forth above, the consummation of the transactions contemplated in the LOI was subject to the "negotiation, preparation, execution and delivery of Definitive Agreements (as defined below) ***acceptable to the Parties in their sole discretion***."  (emphasis added)

25.     The drafts of the Definitive Agreements that were prepared by Heavenly Rx and its legal counsel contained terms that were substantially different from the terms set out in the LOI.

26.     Nevertheless, in good faith, Causemedic was willing to consider most of the new terms and conditions that were proposed by Heavenly Rx.  In fact, Causemedic spent thousands of dollars in legal fees to have its attorneys review and revise various drafts of the Purchase Agreement and the other proposed "Definitive Agreements."  In the end, there were simply too many new and different terms and conditions proposed by Heavenly Rx that were unacceptable to Causemedic.

27.     The parties reached an impasse because Heavenly Rx continued to insist upon terms and conditions that were unacceptable to Causemedic.

28.     As a result, there was never a meeting of the minds between the parties regarding any of the Definitive Agreements and the parties never signed any of the Definitive Agreements.

29.     From the date on which the parties executed the LOI (approximately May 16 or May 17, 2019) through mid to late September 2019, Heavenly Rx's actions, communications and conduct suggested that it was unable and/or unwilling to consummate the proposed transaction with Causemedic.  It also became clear to Causemedic that Heavenly Rx was either unable or unwilling to consummate the proposed transaction upon terms that were acceptable to Causemedic.

30.     One example of Heavenly Rx's conduct is its failure to conduct any meaningful due diligence regarding Causemedic.  The LOI contemplated that Heavenly Rx would complete its legal and financial due diligence within forty-five (45) days after the execution of the LOI.  In reality, Heavenly Rx never conducted any meaningful due diligence regarding Causemedic.

31.     The forty-five (45) day due diligence and "No Shop Period" came and went and the LOI expired or lapsed due to the passage of time and the parties' inability to reach an agreement about various essential terms of the Definitive Agreements.

32.     Alternatively, if the Court determines that the LOI did not expire or lapse, then the LOI was effectively terminated by Causemedic upon delivery of its letter to Heavenly Rx dated October 3, 2019.  A copy of Causemedic's letter is attached to this Complaint and marked as **Exhibit 2**.

33.     In its October 3, 2019 letter, Causemedic gave notice of its intent to discontinue negotiations regarding the Definitive Agreements.  Causemedic also proposed to repay the

$200,000 loan that Heavenly Rx had extended to Causemedic. The payment proposal was rejected by Heavenly Rx. Causemedic later offered to tender payment (in full) of the $200,000 loan, and again, Heavenly Rx rejected the offered payment.

34. By letter from its attorney dated October 8, 2019, Heavenly Rx insisted that the LOI was still binding on the parties. A copy of Heavenly Rx's October 8, 2019 letter is attached to this Complaint and marked as **Exhibit 3**.

35. The October 8, 2019 letter mischaracterized the LOI as "binding." In fact, the LOI lacked sufficient specificity and lacked too many essential terms to be legally binding on the parties. The LOI really amounted to nothing more than an "agreement to agree."

36. The October 8, 2019 letter from Heavenly Rx also mischaracterized the $200,000 loan from Heavenly Rx to Causemedic, referring to the payment as an "initial capital investment." In fact, Causemedic never accepted any capital investment from Heavenly Rx and it never admitted Heavenly Rx as a member or holder of any equity interest in the company whatsoever. In fact, the $200,000 payment from Heavenly Rx was a loan used for operating capital.

37. In its October 8, 2019 letter, Heavenly Rx also demanded reimbursement in the amount of $252,733.25 for expenses allegedly incurred by Heavenly Rx in connection with its ongoing negotiations with Causemedic. The letter included an itemized list of alleged expenses but lacks any backup documentation or other support whatsoever. Causemedic denies both the validity and the reasonableness of all of the alleged expenses.

38. Even if the alleged expenses could be substantiated by Heavenly Rx, it would not be entitled to reimbursement for any amounts it allegedly spent in negotiating with Causemedic. If any of the terms and provisions of the LOI are legally binding (which Causemedic denies), the

LOI expressly provides that "*the Parties will be responsible for their own costs incurred in connection with this Term Sheet and the Definitive Agreement*." (emphasis added) Therefore, Heavenly Rx's demand for reimbursement of expenses has no legal merit.

39. If any party is entitled to recover any of its fees or expenses incurred in connection with these matters, it would be Causemedic. After all, Causemedic was forced to spend thousands of dollars to negotiate and to review and revise drafts of proposed "Definitive Agreements" that were materially inconsistent with the terms set forth in the LOI. This resulted in fruitless and protracted negotiations between the parties, which were prolonged by Heavenly Rx's unwillingness to negotiate in good faith within the parameters set out in the LOI.

40. Causemedic honored the forty-five (45) day "No Shop Period" contemplated in the LOI. At the expiration of the No Shop Period, the LOI expired or lapsed due to the passage of time. Alternatively, the LOI was terminated after the parties failed to reach an agreement on the terms to include in the Definitive Agreements.

41. Nevertheless, Heavenly Rx is seeking to force Causemedic into a transaction despite the clear absence of a "meeting of the minds" between the parties.

42. By letter from its attorney dated October 18, 2019, Heavenly Rx has again insisted that the LOI is binding on the parties. A copy of Heavenly Rx's October 18, 2019 letter is attached to this Complaint and marked as **Exhibit 4**.

43. Causemedic disputes the allegations made in Heavenly Rx's October 8, 2019 and October 18, 2019 letters.

44. Causemedic alleges that the LOI expired, lapsed, or was terminated and therefore it should be declared null and void.

45. Causemedic agrees that Heavenly Rx is entitled to repayment of the $200,000 loan it made to Causemedic. However, Heavenly Rx is not entitled to any other money or other valuable consideration from Causemedic.

46. Meanwhile, Heavenly Rx is currently publishing and using Causemedic's trade name, trade dress and logo on its website (www.heavenlyrx.com). Attached hereto as **Exhibit 5** is a screenshot of the Causemedic logo and name, which are prominently displayed under the navigation tab "BRANDS."

47. Heavenly Rx does not own any license or other right – express or implied – to use or publish any of Causemedic's intellectual property including, without limitation, any of its trade names, logos, trade dress, or other product information.

48. Heavenly Rx's unauthorized use and publication of Causemedic's trade name and trade dress falsely suggests or implies an affiliation between Heavenly Rx and Causemedic, or that Heavenly Rx owns some or all of Causemedic and/or its product lines.

## COUNT I
## DECLARATORY JUDGMENT

49. Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

50. An actual controversy exists between Causemedic and Heavenly Rx regarding the status and enforceability of the LOI.

51. Causemedic hereby requests a declaratory judgment from this Court declaring the rights and obligations of the parties under the LOI and the Term Sheet.

52. Causemedic requests that this Court enter an order declaring that the LOI and the Term Sheet are null and void and are not legally binding upon Causemedic, for all of the reasons set forth above in this Complaint.

53.     Causemedic further requests that this Court enter an order declaring that Causemedic's only obligation to Heavenly Rx is to repay the $200,000 loan made by Heavenly Rx.

54.     Causemedic further requests that this Court enter an order declaring that Heavenly Rx has no legal right to use or publish any of Causemedic's intellectual property on its website or otherwise, including (without limitation) any of Causemedic's registered trademarks, trade names, logos, brand names and/or trade dress.

<u>COUNT II</u>
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

55.     Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

56.     Causemedic entered into the LOI in good faith and dealt with Heavenly Rx in good faith at all times relevant to this action.

57.     Heavenly Rx has dealt with Causemedic in bad faith by attempting to force terms and conditions upon Causemedic that were substantially inconsistent with the agreed-upon terms set out in the LOI.

58.     Heavenly Rx's conduct constitutes a material breach of the duty of good faith and fair dealing, which is implied (by law) and made a part of every contractual agreement.

59.     Heavenly Rx's bad faith breach has proximately caused Causemedic to suffer financial losses and other damages in an amount of not less than One Million Dollars ($1,000,000), for which Causemedic is entitled to a judgment.

## COUNT III
## TRADEMARK AND/OR TRADE DRESS INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114 AND/OR 15 U.S.C. § 1125(a)

60. Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

61. Causemedic sells its products under its registered trademark, "Cause + Medic." (USPTO Reg. No. 88653752)

62. Causemedic's trademark and the designs of Causemedic's product containers and packaging, including their overall visual appearance, are unique and distinctive in the marketplace. Their distinctive appearance indicates Causemedic as the source of Causemedic's products, and Causemedic's trade dress is unique and entitled to protection under the Lanham Act.

63. Causemedic's trade dress includes unique, distinctive, and non-functional designs, including, but not limited to, the shape and color scheme of the product containers and packaging as well as the "Cause + Medic" logo or badge appearing on the containers and packaging.

64. Causemedic has continuously promoted and used its trade dress in the United States and worldwide since the inception of its business.

65. Through its continuous use, advertising and promotion of its products, Causemedic's trade dress has become a well-known indicator of the origin and quality of Causemedic's products.

66. Causemedic's trade dress has also acquired substantial secondary meaning in the marketplace.

67.     Moreover, Causemedic's trade dress had also acquired substantial secondary meaning in the marketplace before Heavenly Rx commenced its unauthorized and unlawful use of Causemedic's trade dress on the Heavenly Rx website.

68.     Heavenly Rx's improper and unauthorized use of Causemedic's trade dress includes, but is not limited to, publishing photos and a hyperlink to Causemedic's products under a navigation tab labeled "BRANDS."

69.     Heavenly Rx's conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114 and/or trade dress infringement in violation of 15 U.S.C. § 1125(a).

70.     The purchasing public is likely to attribute Heavenly Rx's use and publication of Causemedic's trade dress as a source of origin, authorization, affiliation, and/or sponsorship of Heavenly Rx's products, and the purchasing public is likely to purchase other Heavenly Rx products based on that erroneous belief.

71.     The unauthorized use and publication of Causemedic's trade dress by Heavenly Rx falsely represents or designates the source of Heavenly Rx's own products as being affiliated with, connected with, or associated with Causemedic and tends to falsely represent or designate that Heavenly Rx's products originate with, are sponsored or approved by, or are otherwise connected with Causemedic, when in fact Heavenly Rx's products are neither connected with nor authorized by Causemedic.

72.     Heavenly Rx's conduct is likely to cause confusion or mistake, or to deceive the purchasing public as to the source, origin, sponsorship, association, or approval of Heavenly Rx's products.

73.     Heavenly Rx's past and ongoing use of Causemedic's trade dress has been (and continues to be) intentional, deliberate, and willful and has been (and continues to be) likely to

cause confusion or mistake in the marketplace and to deceive purchasers. Heavenly Rx's conduct was also done with the intention of passing off Heavenly Rx's products as those of Causemedic, or as somehow authorized by, affiliated with, or sponsored by Causemedic, and it has had (and will continue to have) an adverse impact on Causemedic as well as an economic effect on interstate commerce.

74. Heavenly Rx's conduct has harmed and continues to cause harm to Causemedic in the form of lost revenues, lost profits, and loss of market share, in an amount not less than One Million Dollars ($1,000,000) and Causemedic is entitled to a judgment against Heavenly Rx to compensate for its damages.

75. Heavenly Rx's conduct has also caused (and stands to further cause) irreparable harm to Causemedic for which there is no adequate remedy at law, and unless it is permanently enjoined, it will continue to cause irreparable harm to Causemedic.

<u>**COUNT IV**</u>
**TRADE DRESS DILUTION**
**IN VIOLATION OF 15 U.S.C. § 1125(c) AND/OR TENN. CODE ANN. § 47-25-513**

76. Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

77. Heavenly Rx's unauthorized publication, advertising, promoting, and other use of Causemedic's trade dress is in violation of 15 U.S.C. § 1125(c).

78. Heavenly Rx's conduct alleged herein also constitutes trade dress dilution and injury to Causemedic's business reputation in violation of Tenn. Code Ann. § 47-25-513.

79. Causemedic's trade dress has become a well-known indicator of the origin and quality of Causemedic's hemp and CBD products. Causemedic's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Causemedic's trade dress had also

acquired substantial secondary meaning in the marketplace before Heavenly Rx commenced its unauthorized and unlawful use of Causemedic's trade dress on its website.

80.     Heavenly Rx's unauthorized use of Causemedic's trade dress has caused, and is likely to cause, dilution of Causemedic's trade dress, at least by eroding the purchasing public's visual identification and association of Causemedic's distinctive trade dress with Causemedic's premium products, by diluting or lessening the capacity of Causemedic's distinctive trade dress to identify and distinguish its products, and by impairing the overall distinctiveness of Causemedic's trade dress.

81.     Heavenly Rx's unauthorized use and publication of Causemedic's trade dress has been intentional, deliberate, willful and malicious.

82.     As a result of Heavenly Rx's conduct, Causemedic is entitled to permanent injunctive relief and is also entitled to recover damages in an amount equal to Heavenly Rx's profits realized as a result of its unauthorized use and publication of Causemedic's trade dress, in addition to Causemedic's other compensatory damages including, without limitation, its lost profits, costs and reasonable attorneys' fees under 15 U.S.C. § 1125(c) as well as under 15 U.S.C. § 1116 and § 1117.

## COUNT V
## UNFAIR COMPETITION AND/OR FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

83.     Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

84.     Heavenly Rx's unauthorized use and publication of Causemedic's unique and proprietary trade dress: (A) constitutes the use of false designations of origin and tend to falsely represent or designate the source of Heavenly Rx's products as being affiliated with, connected

with, or otherwise associated with Causemedic and tends to falsely represent or characterize Heavenly Rx's products as originating with, sponsored or approved by, or otherwise connected with Causemedic, when in fact Heavenly Rx's own products are neither connected with nor authorized, approved, nor sponsored by Causemedic; and (B) are likely to cause confusion or mistake in the marketplace or to deceive the purchasing public as to the origin, sponsorship, association, affiliation, or approval of Heavenly Rx's products.

85.     By using Causemedic's unique and proprietary trade dress, Heavenly Rx misrepresents and falsely portrays to the public the origin and source of Causemedic's products as well as Heavenly Rx's own products, and creates a likelihood of confusion in the marketplace by purchasers of those products about the origin and source of Causemedic's and Heavenly Rx's respective products.

86.     Heavenly Rx's acts described herein have been committed without the express or implied consent of Causemedic.

87.     Heavenly Rx's conduct constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

88.     Heavenly Rx's conduct has been (and continues to be) intentional, deliberate and willful.

89.     Heavenly Rx's conduct has harmed and continues to cause harm to Causemedic, which has suffered damages in an amount not less than One Million Dollars ($1,000,000), and Causemedic is entitled to a judgment against Heavenly Rx to compensate for its damages.

90.     Heavenly Rx's conduct has also caused irreparable harm to Causemedic and, unless permanently enjoined, will continue to cause irreparable harm to Causemedic.

## COUNT VI
## FALSE ADVERTISING
## IN VIOLATION OF 15 U.S.C. § 1125(a)

91.     Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

92.     The express and implied statements made by Heavenly Rx to the public — falsely representing or misleadingly conveying that Causemedic is one of Heavenly Rx's brands and/or that Causemedic's products are manufactured by or otherwise originate from Heavenly Rx — are false descriptions and/or representations of fact regarding the characteristics and qualities of Causemedic's products as well as Heavenly Rx's products.

93.     Such statements made by Heavenly Rx also falsely represent or misleadingly convey that Causemedic's products are equal in quality with Heavenly Rx's other products, when in fact Causemedic's products are superior in terms of quality, market share, and other product characteristics.

94.     Such statements, advertisements, communications and/or announcements made by Heavenly Rx actually deceive or tend to deceive a substantial portion of their intended audience.

95.     Heavenly Rx's statements, advertisements, communications, and/or announcements are "material" in that they will likely influence the deceived consumers' purchasing decisions.

96.     Heavenly Rx's statements, advertisements, communications, and/or announcements were introduced into interstate commerce by the unauthorized publication of Causemedic's trade dress on the Heavenly Rx website.

97.     Heavenly Rx's acts described herein have been without the express or implied authorization or consent of Causemedic.

98.     Heavenly Rx's conduct constitutes false advertising and misrepresentation of quality in violation of 15 U.S.C. § 1125(a).

99.     Heavenly Rx's conduct has been (and continues to be) intentional, deliberate, and willful.

100.    Heavenly Rx's conduct has harmed and continues to cause harm to Causemedic, which has suffered damages in an amount not less than One Million Dollars ($1,000,000), and Causemedic is entitled to a judgment against Heavenly Rx to compensate for its damages.

101.    Heavenly Rx's conduct has also caused irreparable harm to Causemedic and, unless permanently enjoined, will continue to cause irreparable harm to Causemedic.

## COUNT VII
## UNFAIR OR DECEPTIVE TRADE PRACTICES
## IN VIOLATION OF TENN. CODE ANN. §§ 47-18-101, et seq.

102.    Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

103.    Heavenly Rx, either directly or through its agents, representatives or affiliates, has affirmatively passed off (or attempted to pass off) Causemedic's products as being manufactured by or otherwise endorsed by or affiliated with Heavenly Rx.

104.    Heavenly Rx, either directly or through its agents, representatives or affiliates, has also deliberately caused likelihood of confusion or misunderstanding as to affiliation, connection or association with Causemedic, and/or with respect to the origin of Causemedic's products as well as Heavenly Rx's own products, insofar as a potential purchaser might be persuaded that the Causemedic products are in fact manufactured or otherwise endorsed by or affiliated with

Heavenly Rx, when in fact they are not, or conversely, that Heavenly Rx's products are in fact manufactured or otherwise endorsed by or affiliated with Causemedic, when in fact they are not.

105.    Heavenly Rx, either directly or through its agents, representatives or affiliates, has also wrongfully disparaged Causemedic's products by making false and/or misleading representations of fact regarding the source of Causemedic's products and/or the quality of Causemedic's products relative to Heavenly Rx's products.

106.    In its unauthorized marketing the Causemedic products, Heavenly Rx has also used statements or illustrations that create a false impression regarding the origin of Causemedic's products, or which otherwise misrepresent Causemedic's products in such a manner that there is a likelihood that a buyer may be confused about the origin of Causemedic's products.

107.    Heavenly Rx's conduct described herein was and is intentional, deliberate, and willful.  It was and is intended to cause confusion or misunderstanding about the affiliation, connection, or association of Heavenly Rx's products with Causemedic and/or Causemedic's products, and to misrepresent the qualities or characteristics of Heavenly Rx's products as well as Causemedic's products.

108.    Heavenly Rx's conduct has harmed and continues to cause harm to Causemedic has suffered damages in an amount not less than One Million Dollars ($1,000,000), and Causemedic is entitled to a judgment against Heavenly Rx to compensate for its damages.

109.    Heavenly Rx's conduct has also caused irreparable harm to Causemedic and, unless permanently enjoined, will continue to cause irreparable harm to Causemedic.

110.	Heavenly Rx's conduct alleged herein constitutes a pattern of unfair and/or deceptive trade practices affecting the conduct of trade or commerce in the State of Tennessee in violation of Tenn. Code Ann. §§ 47-18-101, et seq.

111.	Heavenly Rx has knowingly and willfully engaged in the unfair or deceptive business practices alleged above, and Causemedic has suffered an ascertainable loss of money or property as a result thereof.

112.	Accordingly, Causemedic is entitled to recover treble (3x) its actual, compensatory damages, as was well as its reasonable attorneys' fees pursuant to Tenn. Code Ann. § 47-18-109(a)(3).

<u>COUNT VIII</u>
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL AND/OR BUSINESS RELATIONSHIPS**

113.	Causemedic references and relies upon the allegations set forth above, which are incorporated herein by reference as if set forth verbatim herein.

114.	Heavenly Rx had actual or constructive knowledge of Causemedic's existing and prospective contractual and/or business relationships with its customers and distributors.

115.	Through its unauthorized use and publication of Causemedic's trade dress, which is prominently displayed under the navigation tab "BRANDS," Heavenly Rx has knowingly, intentionally and maliciously interfered with Causemedic's existing and prospective contractual and/or business relationships with its customers and distributors, by falsely representing that Causemedic is owned or controlled (wholly or partially) by Heavenly Rx, or that Causemedic's products are manufactured by, sponsored by, or otherwise originate from Heavenly Rx.

116.    Heavenly Rx's conduct was and is intended to cause Causemedic's existing customers and distributors to enter into contractual and/or business relationships with Heavenly Rx, in order to improperly and unfairly divert such business to Heavenly Rx.

117.    Heavenly Rx's conduct has harmed and continues to cause harm to Causemedic in an amount not less than One Million Dollars ($1,000,000).

118.    Heavenly Rx's conduct has also caused irreparable harm to Causemedic and, unless permanently enjoined, will continue to cause irreparable harm to Causemedic.

119.    Heavenly Rx's conduct violated Tenn. Code Ann. § 47-50-109.

120.    Heavenly Rx's intentional interference with Causemedic's existing and prospective contractual and/or business relationships with its retailers and distributors was done in bad faith and with malice, entitling Causemedic to recover compensatory damages, exemplary damages, and enhanced or treble (3x) damages resulting from or incident to Heavenly Rx's wrongful conduct.

121.    Additionally and/or in the alternative, Causemedic is entitled to an award of punitive damages in an amount sufficient to punish Heavenly Rx and to deter similar conduct in the future.

**WHEREFORE**, in reliance on the foregoing, Causemedic respectfully prays for the following relief:

A.    That a summons be issued and served upon Heavenly Rx and that it be required to appear and answer this Complaint within the time required by law.

B.    That an expedited hearing be held for the Court to determine the respective rights and obligations of the parties with respect to the LOI.

C.     That this Court enter an order declaring that the LOI is null and void and that Causemedic has no further obligations to Heavenly Rx under the LOI or otherwise.

D.     That judgment be entered by this Court awarding Causemedic compensatory damages against Heavenly Rx in an amount of not less than One Million Dollars ($1,000,000).

E.     That judgment be entered by this Court awarding Causemedic punitive or exemplary damages in an amount of not less than One Million Dollars ($1,000,000).

F.     That judgment be entered by this Court awarding Causemedic treble (3x) its compensatory damages.

G.     That Heavenly Rx be permanently enjoined from using or publishing Causemedic's trade dress, logos, or other intellectual property.

H.     That judgment be entered by this Court awarding Causemedic prejudgment interest on all amounts awarded in this action.

I.     That judgment be entered by this Court awarding Causemedic its reasonable attorneys' fees and discretionary costs associated with prosecuting this case.

J.     That all costs of this action be taxed against Heavenly Rx.

K.     That this Court award Causemedic such other and further relief to which it may be entitled, whether at law or in equity.

Respectfully filed this 30th day of October 2019.


/s/ Chris W. McCarty
Chris W. McCarty, Esq. (BPR # 025551)
Jared S. Garceau, Esq. (BPR # 033304)

LEWIS, THOMASON, KING,
KRIEG & WALDROP, P.C.
620 Market Street
P.O. Box 2425
Knoxville, TN 37901
(865) 546-4646

*Attorneys for Plaintiff Causemedic, LLC*